## STATE–PLANTERS' BANK & TRUST CO. et al. v. PARKER et al.

### EDWARDS–SLAUGHTER CO., Inc.

### No. 2826.

Circuit Court of Appeals, Fourth Circuit.

May 1, 1931.

Percy S. Stephenson, of Norfolk, Va., and Littleton M. Wickham and R. T. Barton, both of Richmond, Va. (Leake & Buford, Christian & Barton, and William A. Moncure, Jr., all of Richmond, Va., and C. S. Towles, of Reedville, Va., on the brief), for appellants.

John W. Oast, Jr., and Leon T. Seawell, both of Norfolk, Va., for appellees.

Before WADDILL, PARKER, and NORTHCOTT, Circuit Judges.

PER CURIAM.

This is an appeal from orders entered in the bankruptcy proceedings of the Edwards-Slaughter Company; and the principal question involved is the power of the District Court to enjoin proceedings in a state court instituted more than four months prior to bankruptcy to determine the rights of lien claimants in a fund now claimed by the trustees as representing the bankrupt. There is raised also the question of the power of the court in a summary proceeding, as distinguished from a plenary suit, to order that the fund be paid over to the trustees when it appears that such fund is adversely held by a third person under a substantial and bona fide claim of right. From orders entered by the court below in favor of the trustees, in bankruptcy, this appeal was taken by the State-Planters' Bank & Trust Company, and its attorneys, who were enjoined from prosecuting the proceedings in the state court, and by the First National Company, one of the parties to those proceedings.

The facts out of which these jurisdictional questions arise are as follows: The bankrupt, on July 1, 1925, executed a deed of trust on certain property to the State-Planters' Bank & Trust Company, hereinafter called the bank, to secure $60,000 in bonds, the payment of which was guaranteed by the First National Company. The bankrupt al-

so executed and delivered to the bank its promissory note in the sum of $20,000, secured by a preferred maritime mortgage on the steamship M. M. Davis, to be held under the terms of the deed of trust as security for the bonds. It also delivered insurance policies upon the steamship in the amount of $60,000, payable to bankrupt and to the bank as trustee, in accordance with article 10 of the deed of trust, which required that, so long as any of the bonds should be outstanding, bankrupt should carry fire and marine insurance on its steamers indorsed to the trustee. Later, when these policies were about to lapse for nonpayment of premiums, the bank paid the premiums and renewed the policies with funds paid to it upon demand by the First National Company, the guarantor of the bonds secured.

The steamship was destroyed by fire on September 18, 1927, and there was collected on the policies insuring it the net sum of $58,256.67. A controversy arose as to whether the whole of this amount or only $20,000 thereof was applicable to the bonds secured by the deed of trust, the bank contending that it was entitled to apply the entire amount to this purpose, because of a provision of the deed of trust to the effect that all proceeds of insurance should be treated in the same manner as proceeds from a sale by foreclosure and should be applied in payment of bonds. For the purpose of determining this controversy, it instituted a suit in chancery, filing a bill of complaint in the circuit court for Northumberland county, Va., against the bankrupt and others, in which it alleged that the holders of the bonds and interest coupons secured by the deed of trust were entitled to the entire proceeds of the insurance policies, but that, as certain claims had been asserted against these proceeds by others than the bond and coupon holders, it desired to have the guidance and protection of the court, and therefore requested it to supervise the distribution of the fund. The bill in the state court is not set forth in the record, and the nature of the claims asserted by persons other than the holders of bonds and coupons does not appear, but we do not think that this is material, for the reason that it does appear that the suit in the state court was instituted by the bank as the holder of the fund in controversy and as representative of the bond and coupon holders against the mortgagor in order that the court might pass upon the liens asserted and direct how the funds should be distributed. The bankrupt and the guarantor filed answers to the bill, alleging that the entire proceeds of the in-

surance should be used in payment of the bonds and coupons and praying that same be so used.

The suit in the state court was instituted February 8, 1928. The date of the filing of answers by the bankrupt and the guarantor does not appear, but was sometime between February 8 and May 24, 1928. On the latter date the suit was referred to a master in chancery, who on September 29th filed his report therein. Prior thereto, on August 8, 1928, the Edwards-Slaughter Company had been adjudged a bankrupt, and when the master's report was filed on September 29th a rule was issued by the judge below against the bank and its attorneys to show cause why they should not be enjoined from further prosecuting the suit in the state court. This rule was made absolute on October 23, 1928, and on November 1st an order was entered directing the bank to pay into the bankruptcy court the fund in its hands. From these orders the bank and its attorneys appealed. The guarantor, not having been made a party to the rule, filed its petition setting forth the facts of the case, challenging the jurisdiction of the court to interfere with the proceedings in the state court, or by summary proceedings to require an adverse claimant of the fund in controversy to pay same into court, and praying that the injunction and order be set aside and the fund returned to the bank. The court, upon objection by the trustees in bankruptcy, declined to permit the guarantor to intervene or file its petition; and it, also, has appealed.

Upon a disagreement of the judges of this court, certain questions were certified to the Supreme Court. The certificate was dismissed by that court (State-Planters' Bank & Trust Co. et al. v. Parker et al., 51 S. Ct. 463, 75 L. Ed. ——); but in view of what was said in the opinion dismissing the certificate and of what was said by the court in deciding the companion case of Straton et al. v. New, Jr., et al., 51 S. Ct. 465, 75 L. Ed. ——, we think that the court below was without jurisdiction to enjoin the proceedings in the state court in this case or to order the fund in controversy paid into the registry of the court. The orders appealed from will, therefore, be reversed, and the cause will be remanded, with directions that an order be entered for the return of the fund in controversy to the bank, to the end that the circuit court of Northumberland county may proceed to determine the rights of the claimants in the fund and direct its disposition.

Reversed.

Note.—Judge WADDILL, who sat in the hearing of this case, died before the case was decided and did not participate in the decision.